**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **DIAN DAWSON LESTER,** | § | |
| Plaintiff, | § | |
| vs. | § | No.  3:06-CV-1357-BH |
| | § | |
| **ALVIN LESTER,** | § | |
| Defendant. | § | Consent Case |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the District Court's *Order of Transfer*, filed June 23, 2009, and the consent of the parties, this matter was reassigned for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c).  Before the Court is *Defendant's Motion to Dismiss for Lack of Jurisdiction* ("Mot. Dismiss"), filed on June 28, 2009 (doc. 62).  Based on the pertinent filings, evidence, and applicable law, the motion to dismiss is **GRANTED**.

**I.  BACKGROUND**

On July 17, 1998, Dian Lester ("Plaintiff") and Alvin Lester ("Defendant") were divorced in Dallas County, Texas.  (*See* Agreed Final Decree of Divorce at 1-25 (entered in Cause No. 97-10206-Z in the 256th Judicial District Court of Dallas County, Texas.)[1]  The parties consented to the terms of the decree and "stipulated that the provisions for division of assets and liabilities are contractual." (*See id.* ¶ 6.)  Plaintiff was awarded fifty percent of Defendant's military retirement benefits, including fifty percent of any increases to those benefits, to be paid monthly when the retirement benefits were paid to Defendant. (*See id.* ¶¶ 15-16.)  Because Plaintiff was entitled to medical and dental care and commissary and post exchange privileges to the same extent as a surviving spouse of a retired service member, Defendant was further ordered "to cooperate as necessary

---

[1] Both parties have submitted a copy of the divorce decree.

by timely taking whatever action is necessary to enable [Plaintiff] to retain and/or obtain these benefits on [her] request." (*Id.* at 19-20.) To effect the transfer and delivery of the property awarded in the divorce decree, each party was ordered to execute, acknowledge, and deliver all military cards or other necessary documentation to the opposing party. (*Id.* ¶ 18.) The state court "expressly reserve[d] the right to make orders necessary to clarify and enforce this decree." (*Id.* ¶ 24.)

The parties were appointed joint managing conservators of the two children of the marriage (Alzena and Amanda, respectively sixteen and seven years old at time of divorce), but Plaintiff was granted the exclusive right to establish their residence and domicile, and she had custody except for those times specifically awarded to Defendant. (*See id.* ¶¶ 8-9.) Defendant was ordered "to keep and maintain in current status and deliver to [Plaintiff] the identification cards and any other forms necessary for the children . . . to be provided health care through all facilities available to the children as dependents of a United States Armed Forces member." (*See id.* ¶ 10.) He was also ordered to provide Plaintiff "all additional verified applications for renewal of dependent identification cards, until the children are no longer eligible for these benefits." (*Id.*)

On July 27 2006, Plaintiff filed this action to enforce the final divorce decree. (Compl. at 1.) She claims that she sought her portion of her ex-husband's retirement pay for August to October 2004, necessary documents to obtain health care, and reimbursement of medical or health expenses she has paid because she was not provided the necessary documents. (*Id.*) In verified answers to court-issued questionnaires, she indicates that she seeks $159, 289.00 for six categories of relief:

> (1) compensatory damages for her portion of her ex-husband's military retirement pay for the three months in 2004 (original value of $996.61 per month to be increased for cost of living) and repayment of all reductions of entitlement from 2004 with interest (unspecified value), collectively referred to as retirement pay benefits;
>
> (2) unspecified compensatory damages for her and her three daughters' past and

2

future emotional pain, lost self-esteem, grief, stress, anxiety, stigma, depression, humiliation, mental anguish, physical pain, and lost enjoyment of life, hereafter referred to as emotional damages;[2]

(3) relief from criminal charges;

(4) reimbursement for past and future attorney fees, expenses, and costs (valued at approximately $5,000.00) related to expungement of a felony criminal charge;

(5) required documentation for identification cards and health benefits; and

(6) reimbursement of out-of-pocket health expenses from 1998 (valued at approximately $42,582.00) and present and future health and dental coverage for Amanda and Deniece, collectively referred to as health benefits.

(*See* Answer to Question 2 of Magistrate Judge's Questionnaire ("MJQ") ¶¶ 1-6; Answers to Questions 1 and 2 of Second MJQ.)[3] She believed that Defendant resided in Georgia. (*See* Answer to Question 1 of MJQ.)

Defendant was ultimately served with process in Georgia on September 15, 2008. (*See* Process Receipt & Return, doc. 37). He now moves to dismiss this action for lack of jurisdiction. On September 1, 2009, Plaintiff filed multiple responses to Defendant's motion. In his reply, Defendant contends the responses are untimely and urges the Court to not consider them. (*See* Def.'s Consolidated Reply, doc. 76.) The issues are ripe for consideration.

## II.  UNTIMELY RESPONSES

Plaintiff's responses to Defendant's motion are untimely. Following two granted extensions of time, Plaintiff's response to the motion was due on or before August 31, 2009. (*See* Order of Aug. 11, 2009, doc. 71.) She did not respond until September 1, 2009. Although she has certified

---

[2] Plaintiff lists Alzena, Amanda, and Deniece as her daughters in this claim for relief. In her third claim for relief, she mentions a grandchild.

[3] Plaintiff's answers to the questions posed by the Court constitute an amendment to the filed complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

3

that the responses were served on Defendant by certified mail on August 31, 2009, Defendant has provided an envelope with a post-mark of September 1, 2009.

Although the courts liberally construe the pleadings of a *pro se* plaintiff, *see*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam), *pro se* litigants are still required to follow applicable rules of procedure, *see Rolen v. City of Brownfield*, 182 Fed. App'x 362, 364 (5th Cir. 2006) (per curiam). Nevertheless, the courts have discretion to overlook technical noncompliance with procedural rules, especially when there is no prejudice to the opposing party. *Grant v. Cuellar*, 59 F.3d 523, 524-25 (5th Cir. 1995).

Defendant does not allege any prejudice resulting from consideration of responses that are one day late, and none is apparent, so the responses will be considered.

### III. RULE 12(b)(1) MOTION TO DISMISS

Although Defendant seeks summary judgment (*see* Docs. 63-64), he also challenges this Court's jurisdiction over this case (*see* Def.'s Brief Supp. Mot. Dismiss ("Def.'s Brief") at 1-7).[4] While Defendant does not identify the basis for his motion except generically as a motion to dismiss for lack of jurisdiction, such a motion is properly brought pursuant to Rule 12(b)(1).

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

When a party files a Rule 12(b)(1) motion with other motions to dismiss or for summary

---

[4] Defendant has not numbered the pages of his motion or supporting brief. Such failure makes it more difficult to precisely cite to the filings. The Court has therefore provided the omitted page numbering.

judgment, the Rule 12(b)(1) motion is considered before addressing the other attacks. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

Lack of subject matter jurisdiction under Rule 12(b)(1) "may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); *accord* Fed. R. Civ. P. 12(h)(3). Courts may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F. 2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.* Facial attacks are usually made early in the proceedings. *Id.* When the defendant supports the motion with evidence, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting jurisdiction constantly carries the burden of proof to establish that jurisdiction does

5

exist. *Ramming*, 281 F.3d at 161.

To support his motion to dismiss in this case, Defendant relies on Plaintiff's complaint; her answers to questions propounded by the Court, which constitute amendments to her complaint, and attachments thereto; and various state court documents, which are a matter of public record. Defendant thus merely presents a facial attack that does not require the Court to resolve matters outside the pleadings. *See Ramming*, 281 F.3d at 161; *Williamson*, 645 F.2d at 412-13.

**A. Exclusive Jurisdiction**

Defendant argues that federal jurisdiction is lacking in this case because Texas law grants Dallas County courts continuing and exclusive jurisdiction over child support issues, property enforcement claims, and Plaintiff's current felony fraud matter. (*See* Def.'s Brief at 4-8.) However, jurisdiction in this case is premised on the federal diversity statute, 28 U.S.C. § 1332. State law can neither enlarge nor contract federal jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 314 (2006); *MRCo, Inc. v. Juarbe-Jimenez*, 521 F.3d 88, 95-96 (1st Cir. 2008); *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 909 n.3 (7th Cir. 2005). Dismissal under Rule 12(b)(1) is inappropriate on this basis. *Jarrard*, 408 F.3d at 909 n.3.[5]

**B. Diversity Jurisdiction**

Defendant also argues that the Court lacks jurisdiction because Plaintiff has not satisfied the jurisdictional amount for diversity jurisdiction. (*See* Def.'s Brief at 3-4.)

Diversity jurisdiction under 28 U.S.C. § 1332 is proper only when complete diversity exists

---

[5] Although there is a "domestic exception" to diversity jurisdiction, *see, e.g.*, *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992), Defendant does not rely on this exception, and it is inapplicable. The exception merely "divests the federal courts of power to issue divorce, alimony, and child custody decrees", *see id.*; *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 386 n.2 (5th Cir. 2001), and Plaintiff does not seek the issuance of such a decree; she seeks enforcement of an existing divorce decree.

6

between the parties and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." The "amount-in-controversy threshold" is a necessary "ingredient of subject-matter jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). This "monetary floor" must be met before a federal court properly exercises diversity jurisdiction. *Id.* A claim for damages made in apparent good faith controls the jurisdictional question, and "the jurisdictional facts must be judged as of the time the complaint is filed." *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

When "it appears or is in some way shown that the amount stated in the complaint is not claimed in 'good faith,'" however, courts may look beyond a plaintiff's allegations. *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Dismissal of an alleged diversity action for lack of jurisdiction is proper when it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 289). Claimed damages necessarily fall short of the jurisdictional amount when disregarding any asserted defense, there is a legal certainty "that the plaintiff cannot recover the amount claimed", or "that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995) (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 289). When determining the amount in controversy, the courts may apply common sense to the allegations, *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995), and "may look, not only to the face of the complaint, but to the proofs offered by the parties", *U.S. Fire Ins. Co. v. Villegas*, 242 F.3d 279, 283 (5th Cir. 2001). The amount in controversy includes all damages available under the law governing the suit but the party seeking to invoke

the court's jurisdiction must rely on more than conclusory allegations to establish jurisdiction. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1254-55 (5th Cir. 1998).

### 1. *Governing Law*

Because Plaintiff seeks to enforce a divorce decree entered pursuant to Texas law in this diversity action, Texas substantive law governs. *See Huss v. Gayden*, 571 F.3d 442, 449 (5th Cir. 2009) (recognizing that the substantive law of the forum state applies in diversity actions). In Texas, "[a] party affected by a decree of divorce or annulment providing for a division of property . . . may request enforcement of that decree by filing a suit to enforce . . . in the court that rendered the decree." Tex. Fam. Code Ann. § 9.001(a) (Vernon 2006). Texas courts may render enforcement orders regarding division and deliver of property, as well as the right to future property. *Id.* §§ 9.006, 9.009, 9.011. Texas law also allows the courts to reduce certain divorce awards to a money judgment in the following circumstances:

> (a) If a party fails to comply with a decree of divorce or annulment and delivery of property awarded in the decree is no longer an adequate remedy, the court may render a money judgment for the damages caused by that failure to comply.
>
> (b) If a party did not receive payments of money as awarded in the decree of divorce or annulment, the court may render judgment against a defaulting party for the amount of unpaid payments to which the party is entitled.
>
> (c) The remedy of a reduction to money judgment is in addition to the other remedies provided by law.
>
> (d) A money judgment rendered under this section may be enforced by any means available for the enforcement of judgment for debt.

*Id.* § 9.010.

Texas law also permits parties to a divorce to enforce some provisions through a general contract action. *See Fleming v. Easton*, 998 S.W.2d 252, 255 (Tex. App. – Dallas 1999) (addressing

8

Texas law as it then existed after 1997 amendments); *Adwan v. Adwan*, 538 S.W.2d 192, 194-95 (Tex. Civ. App. – Dallas 1976, no writ) (addressing pre-amended version of Texas law). Although current Texas law precludes contractual enforcement of some provisions of a divorce decree, *see* Tex. Fam. Code Ann. §§ 153.007 (agreed parenting plan not enforceable by contract); 154.124 (agreements concerning child support not enforceable by contract), no provision precludes a contract action for enforcing a written agreement concerning a division of assets and liabilities. Texas law in fact permits spouses to "enter into a written agreement concerning the division of the property and the liabilities of the spouses and maintenance of either spouse" so as to "promote amicable settlement of disputes in a suit for divorce or annulment." *Id.* § 7.006(a).

### 2. *Claimed Damages*

Plaintiff asserts total damages in excess of $150,000.00. (*See* Answer to Question 2 of Second MJQ.) Defendant argues that she has asserted that amount in bad faith because even if the Court considers allegedly invalid claims for fees and expenses related to state criminal proceedings and for out-of-pocket medical expenses not provided for in the divorce decree, her individually stated damages add up to $52,851.10.[6] (Def.'s Brief at 3-4.)

The Court considers whether Plaintiff has a good faith basis for the damage claims not included in the Defendant's calculations. With respect to retirement pay benefits, Defendant's calculations focus entirely on the three missed payments in 2004. (*See* Def.'s Brief at 4.) Plaintiff, however, also seeks unspecified damages for reductions to retirement pay benefits received from

---

[6] Although Defendant does not necessarily agree that Plaintiff is entitled to such damages, he calculates her damages by adding her individual damage claims for (1) three missed retirement pay benefits in 2004 ($2,989.83 plus interest); (2) fees, expenses, and costs estimated by Plaintiff at approximately $5,000.00; and (3) out-of-pocket health expenses of $42,582.00. (Def.'s Brief at 4.) This calculation either fairly estimates or uses the value attributed to these individually specified damages by Plaintiff.

9

Defendant. (*See* Answer to Question 2 of MJQ.) Plaintiff appears to have a good faith basis for seeking damages for such alleged underpayment under Texas law. *See* Tex. Fam. Code Ann. § 9.010(b). Although Plaintiff does not elaborate much about these reductions, a letter she sent to Defense Finance and Accounting Services in August 2006 indicates that when Defendant retired in July 2004 her portion of his retirement was $970.49; increased to $996.61 between December 2004 and January 2005; and was thereafter reduced to $942.85 in February 2005, $832.01 in August 2005, and $899.44 in February 2006. (*See* Ex. F. attached to doc. 73.) Consequently, when she filed this action in July 2006, her claim for damages for reduced retirement benefits added no more than another $4,000 to the jurisdictional equation.[7]

As for Plaintiff's claim for emotional damages, neither the divorce decree nor Texas law provides for recovery of such damages in an action to enforce the decree. Even if the Court construed this enforcement action to include a claim for breach of contract, such damages are not recoverable under Texas law. *See Latham v. Castillo*, 972 S.W.2d 66, 72 (Tex. 1998); *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 613 (Tex. App. – Fort Worth 2006, pet. denied). Consequently, Plaintiff has not made her claim for emotional damages in good faith, and they do not factor into the jurisdictional amount.[8]

---

[7] Using the highest monthly difference in the paid retirement benefits, *i.e.*, $164.60, for the twenty-three-month period between August 2004 and the commencement of this action in July 2006, the damages for reduced benefits would equal $3,785.80. Naturally, such calculation is not an accurate estimation of Plaintiff's alleged loss because the highest monthly difference is not the applicable amount for each month, and there may be months when Plaintiff received the maximum amount. Nevertheless, the calculation supports finding that Plaintiff's potential damages for reduced retirement benefits is less than $4,000 because it errs on the side of overestimating her potential damages.

[8] Some of the claimed emotional damages relate to alleged damages suffered by Plaintiff's children. Plaintiff, however, has no standing to sue for alleged acts or omissions that do not infringe upon a legally recognized right belonging to her. *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Parents have no standing to pursue relief on their own behalf for alleged damages to their children. *See Polk v. City of Corsicana*, No. 3:05-CV-0861-G, 2006 WL 385127, at *5 (N.D. Tex. Jan. 24, 2006) (recommendation of Mag. J.), *accepted by* unpub. order (N.D. Tex. Feb. 14, 2006). By addressing the emotional damages in the aggregate, the Court is not suggesting that Plaintiff has any viable claim for emotional damages to her children.

Defendant omitted no more than $4,000.00 from its calculations of Plaintiff's damages. With the omitted amount, Plaintiff still falls well short of the $75,000.00 jurisdictional threshold for diversity jurisdiction. Given the unavailability of emotional damages in this action, Plaintiff has not stated her total amount of damages in good faith. Based upon the information provided by Plaintiff, and considering only the alleged claims for relief properly sought (or assumed to be properly sought based upon Defendant's calculations), it appears to a legal certainty that Plaintiff will be unable to exceed the jurisdictional amount of damages necessary to pursue this action under 28 U.S.C. § 1332. Plaintiff has therefore failed to carry her burden to show that the Court has jurisdiction over this action.

## IV. CONCLUSION

*Defendant's Motion to Dismiss for Lack of Jurisdiction* (doc. 62) is **GRANTED,** and this action is **DISMISSED** for lack of jurisdiction without prejudice to Plaintiff pursuing an action in the proper state court.

**SO ORDERED** on this 29th day of October, 2009.

                                                    IRMA CARRILLO RAMIREZ
                                                  UNITED STATES MAGISTRATE JUDGE